McKinney v. Sheriff's Office of Whitley Co. Robert Owen Begler, on behalf of Mr. McKinney. Good morning, Your Honors. I guess I'll start with Ortiz, because the district court did not cite Ortiz. That's correct. But the ultimate conclusion that the district court correctly reached was that the entire sum total of the evidence showed that Mr. McKinney had failed to prove an intent to discriminate on the part of the sheriff. What was the worst thing that McKinney did? That's why I'm asking, what's the worst? And then disregarding a direct order, not from the sheriff, but from a supervisor. Now, what's the problem with using your cell phone while you're driving? The dangerous situation that that creates. What does the standard operating procedure say? With regard to that? I don't have a standard operating procedure. It's in the appendix. It says cellular telephones shall not be used for texting while the vehicle is in motion. Use of cellular telephones while driving is permitted only when it can be done safely. You can use it in lots of manners, such as the plaintiff testified he did. Was there any basis for saying that he was texting? There was another officer with him who saw him texting and reported that. So that's what the sheriff was going with. Let's see, where do we get that? That's in the sheriff's affidavit. So the sheriff is saying somebody else told him that he was texting. McKinney says, no, I was using it properly and legitimately. What rational basis did the sheriff have for saying there was a violation of the standard operating procedure? I believe the person that was with him was a superior officer because Mr. McKinney was a probationary officer at the time. Is that in the sheriff's affidavit? That is not. That is not wrong. So has there ever been a case where a white officer was reported to the sheriff as having texted? I don't have an officer for that specific violation. Not for that specific violation that I have. But I do have in the affidavit in 2009, I believe. I mean, I bet they wouldn't do it. And the texting while driving was first raised in the litigation, right? No. It was not part of the sheriff's original letter terminating, was it? It was part of it, using his cell phone while driving. Where do we see that? That should be in the termination letter. Yeah, I agree. It should be there if that was a reason. I'm looking at, is this the letter of May 15th or May 19th? I'm not quite sure. It's not in either one. Let's start with, to answer Judge Posner's question, what are the worst things he did? I assume those would have been the things that the sheriff cited in his initial letter. Yes. There were numerous things that concerned the sheriff. He cited three. How about the gas credit card? Would you agree that his conduct there did not actually violate Standing Operating Procedure 20? Because he physically couldn't use the gas credit card, could he? Will you return home on the weekends and fuel up at the county gas station? Yeah, I misspoke. He would have had to use the gas credit card because he's going to Plainfield, right? And it's more than a tank of gas, and he's not supposed to take his gas tank down to zero, down to empty, when he's driving a county unit, because he might be called upon to do something, right? I would go back to the sheriff's honest, maybe mistaken, belief. Well, I understand that, but how honest is the belief? And I understand this is open for dispute. But let's take a look. The Standard Operating Procedure 20 says, Gasoline credit cards shall be used only with a county commission, that is a car, when fueling at the county facility is not available. Now, there's also evidence that other officers who went to the ILEA in Plainfield used their credit cards to charge gas in Plainfield and thereabouts. We've got evidence that a supervisor told McKinney when he went to the ILEA, Hey, make sure you've got your card so you can buy gas. And we've got evidence that it would have been mathematically impossible. How could the sheriff have honestly believed that this was contrary to policy? The sheriff's, again, honest, if the court believes mistaken, that's fine. Honest belief is that there should be enough fuel to get you to and from the ILEA. And is the district court required to consider reality, mileage, gas tank capacity, and so on, in evaluating the honesty of that belief? Which I assume the sheriff would be pretty familiar with those facts. The appellant didn't present any evidence of that to the district court or to this court. Any evidence of what? Of how the mileage that it would take, of the fact that he ran out of gas or was running out of gas. Everything I just cited to you was out of the appendix, which is out of the district court record. Right. What am I missing? Again, I did not see any mileage reports, any documents evidencing how many miles he would get per gallon, how long it would take him to get there. Those are the things that he would have to establish. The other deputy, the white people, they must make mistakes of this sort. Sure. Did they get fired? He was a probationary officer. Pardon? He was a probationary officer. In 2009, the sheriff also fired a probationary Caucasian officer for multiple violations. Same here. We have a list of different things that are going wrong during the probationary year. And what were those violations? Are they in the record? They are. They're in the sheriff's affidavit again. Those included being late to work, allowing contact between inmates and their families and friends in court. Allowing what? Allowing contact between inmates and their families and friends in court, and speeding in a department vehicle without authorization. Can we go back? No, I'm sorry. I take that back. That's a different officer. The probationary officer was failing to respond appropriately to a personal injury accident, taking longer than required to respond to a residential alarm, failing to include a witness in a written report, failing to appropriately follow through on an investigation, failing to respond immediately to a call for assistance in the jail, failure to properly complete a jail record, and failing to obtain proper approval for overtime. And that was a Caucasian probationary merit officer, just like Mr. McKinney. And your contention is that that's comparable to the gas credit card and submitting hours at the ILEA, as he was told to by the sheriff and his assistant and other superior officers. What I'm saying is I go back to the sheriff believed honestly that these warranted terminations. You don't know what he believed honestly. I understand you can make that argument to a jury. What do you know about his honesty? Well, let me put it this way. Some great record or something and never lied? Sure. I should have said it differently. George Washington, you know. The appellant hasn't provided any evidence that what the sheriff has said was a lie. He's offered circumstantial evidence that it was utterly baseless. In his opinion. All he has provided is. Take his evidence at face value, including what he was told by other people in the department about using the gas credit card, about filing his hours, about filing monthly reports, reading the standard operating procedures, which do not say what the sheriff said. Surely the sheriff should know. And your contention is it's unreasonable to even allow an inference that these are pretextual reasons. Well, he has put forward as his second guessing of the sheriff's decisions is his speculation as the sheriff's. This is this is this is not second guessing. This is this is. Evidence that if credited demolishes the factual basis for the sheriff's reasons. All while the appellant has shown is that the sheriff may have been wrong. You keep saying maybe wrong. I mean, that's serious. So the sheriff is, you know, has responsible has a responsible job. If he's wrong all the time, that's that's serious. That's if he's wrong all the time. Why would you think he was acting honestly? Being wrong and stupid. Just stupid. He's honest, but he's stupid, but honest. That's what you're saying. Being stupid, being wrong, making a mistake are not is not a mistake, not a single, not a. We're not talking about one mistake is otherwise unblemished record. Right. I would disagree with that. Oh, you think he made just one mistake? Oh, the sheriff. I'm sorry. Pardon? I thought you were asking about McKinney. No, I'm asking about the sheriff. You say he just made one mistake in his whole life. I'm not saying he did or he didn't. What I'm saying is that a mistake. How many mistakes did he make? I don't believe he made any mistakes. All right. That's what you think. If the court feels that he did. First, you think he may have made a mistake. You said, of course, he may have been wrong, but he was honest. Now you're taking that back. You say he's never made a mistake, as far as you know. I don't feel he was wrong, but if the court feels that he was wrong, again, that is not evidence of pretext. But you said people make honest mistakes. Yes, and this court has repeatedly held that honest mistakes do not equal meeting the legitimate expectations of the job, and they do not mean pretext for discrimination in terminating someone. And so that is all the appellant has ever shown, the district court or this court, is his assertions that that's true. He's shown the court no other testimony. And I would distinguish Ortiz in that particular way because Ortiz did present deposition testimony. So is the sheriff's domain just Fort Wayne? Whitley County. Pardon? Just Whitley County. The whole county. Which is not Fort Wayne. Not Fort Wayne. What's the black population of Whitley County? I do not know, Judge. I would, though, also, you know, we've talked about same hire, fire. Sheriff Hodges hired him. He's the same person that fired him. I understand there's case law out there saying that can be a question of fact. There's also case law finding that as a matter of law, the EEOC case. Why should it be one or the other? Why do you think that is a matter of law? Based on the EEOC case that we've cited that was held by this court. Well, if you've got conflicting precedent, how should we, on the merits, why should this argument that it was the same person who made the decisions, therefore he couldn't have been biased in the later decision, why is that a rule of law as opposed to something to just argue to a jury under the circumstances? Because of the illogical nature of the fact that someone would hire, especially in this case, somebody would hire somebody and within nine months completely change their tune and decide to discriminate against them based on race. Are you familiar with the stray remarks line of cases from our court? Yes. Which assume that if somebody might have said something racist a year earlier was not necessarily motivated by that same animosity when they act a year later, right? Right. Does that make any sense or is it a matter of law and isn't it inconsistent with the same actor inference? Well, my understanding of stray remarks is if it's not made by a decision maker. Assume it's made by a decision maker. Okay. If it's made by a decision maker. But not in connection with the decision. Okay. I, again, would say that's different than a decision to terminate because if you've made that decision to hire someone in the first place, there's no reason to do so if you have that bias against them. The plaintiffs certainly show no reason for the sheriff to do that in this case. Thank you. Okay. Well, thank you very much for having us. Thank you, Your Honor. Mr. Begler, do you have anything further? You're not going to get up and drug him out of it, are you? No. I'm just going to say one thing, and that is the paucity of evidence was done by the sheriff. There were no documents, no exhibits, no affidavits, nothing other than the sheriff's affidavit. Mr. McKinney presented this court with the affidavits, the documents, the actual transport orders, the plain field receipts, et cetera. Thank you. Okay. Thank you very much to both counsel.